Bertha A. MESCAL, et al., Plaintiffs,

v.

UNITED STATES of America, et al., Defendants.

No. CIV 83–1408 LH–WWD.

United States District Court, D. New Mexico.

June 2, 1995.

Paul E. Frye, Nordhaus, Haltom, Taylor, Taradash & Frye, Daniel M. Rosenfelt, Rosenfelt, Barlow, Barber & Borg, Albuquerque, for plaintiffs.

John W. Zavitz, U.S. Atty's Office, D. of N.M., Albuquerque, NM, Pamela S. West, U.S. Dept. of Justice, Land and Natural Resources, Washington, DC, for Federal defendants.

Thomas C. Bird, William Spencer Reid, Keleher & McLeod, P.A., Albuquerque, NM, John W. McReynolds, Paul O. Wickes, Worsham, Forsythe & Woodridge, Dallas, TX, Marte D. Lightstone, Lyman G. Sandy, Miller, Stratvert, Torgerson & Schlenker, P.A., Albuquerque, NM, John H. Miller, P & M Coal Min. Co., Englewood, CO, Dean B. Cross, Losee, Carson, Haas & Carroll, Artesia, NM, for non-federal defendants.

### MEMORANDUM OPINION

HANSEN, District Judge.

**THIS MATTER** comes before the Court, *sua sponte*, on the Court's Order and Notice of Hearing (Docket No. 636), wherein the Court directed that the government show cause why sanctions should not be imposed against Federal Defendants' counsel, Pamela West, and/or the United States of America, for violations of the Court's prior orders. Having reviewed the submissions and arguments of the parties, and having thoroughly considered the applicable law and the prior orders of this Court, the Court finds that the federal defendants—acting through counsel Pamela West of the United States Department of Justice—have intentionally violated the explicit mandates of three scheduling orders of this Court in order to obstruct the administration of justice in this case and cause a nearly one-year delay in the progress of this litigation. The Court finds that sanctions under FED.R.CIV.P. 16(f) are appropriate and should be imposed against Pamela West, individually, and against the United States Department of Justice.

### Background

Litigation in this case began over a decade ago on August 31, 1983. The parties dispute ownership rights of mineral interests for allotted lands in New Mexico. On August 25, 1989, Judge Campos entered a Rule 16(b) Pretrial Scheduling Order, directing that the litigation proceed in three separate phases: 1) an "Initial Phase"; 2) a "Liability Phase"; and, 3) a "Remedy Phase." The action was transferred to this Court in October, 1992. Due, in part, to continual controversies and a lack of cooperation among the parties, this case has failed to advance beyond the Initial Phase, where the "only matters being addressed are those that do not go to the merits of the Plaintiffs' claims." Indeed, the parties still contest whether subject matter jurisdiction lies with this Court.

As a result of this stagnation, the Court called a status conference on May 19, 1994. I expressed my dissatisfaction with the pace of litigation and admonished the parties for their inability to deal with routine matters without the Court's intervention. Pamela West then offered a new theory, wherein the Federal Defendants believed that this Court lacked subject matter jurisdiction, and that the case must be dismissed or transferred to the Federal Claims Court. The basis for this assertion was the extensive research already

conducted by the United States [1] on the theory that this was a "takings" case where the underlying claims were in excess of $10,000. Ms. West, the Court, and counsel for Plaintiffs extensively discussed the nature of the issue and the possibility that this Court would lack jurisdiction under the Little Tucker Act, 28 U.S.C. § 1346(a)(2), to grant the relief sought by Plaintiffs in this case.[2]

Following this discussion, the parties agreed that the appropriate way to proceed was for the United States to first file a motion to dismiss or transfer to the Federal Claims Court for lack of subject matter jurisdiction predicated on the "takings" theory expounded by Ms. West.[3] The Court then instructed Ms. West and counsel for Plaintiffs to submit an agreed-to order amending the 1989 Rule 16(b) Pretrial Scheduling Order. The Court entered the agreed-to order submitted by counsel for Plaintiffs the day following the status conference.[4] In addition to laying out the details of the briefing schedule for the motion to be filed by the United States, the Order required Ms. West and Paul Frye, counsel for Plaintiffs, to use "good faith efforts to come to agreement on" a factual appendix detailing the legislative and administrative chronology associated with the allotments at issue.

1. Ms. West stated, "We have spent a lot of time doing it [researching the issue of subject matter jurisdiction]. Perhaps, Your Honor, too much time.... We believe, Your Honor, this is probably a takings case, and we question whether it should be in this court." Tr., Status Conf. 16–17 (May 19, 1994).

2. Tr., Status Conf. 16–41 (May 19, 1994).

3. Indeed, Ms. West assured the Court that the motion to be filed would "focus squarely on whether or not this is a case for this Court or the Claims Court." *Id.* at 41–42.

4. The relevant portion of the clear and unambiguous language of the Order Amending the Rule 16(b) Pretrial Scheduling Order (Docket No. 596) entered by the Court on May 20, 1994 is as follows:

   The United States shall file by August 17, 1994, a motion to dismiss or transfer this case to the United States Court of Federal Claims for lack of subject matter jurisdiction, predicated on the 'takings' theory articulated by counsel for the United States at the status conference.
   The Order continues:

On August 17, 1994, Ms. West failed to file a motion predicated on the "takings" theory as required by the Court's May 20, 1994 Order. Instead, Ms. West filed Federal Defendants' Motion to Stay Briefing Schedule Pursuant to Order Amending Rule 16(b) Pretrial Scheduling Order Pending Resolution of Class Representation Given the Death of Plaintiff Etcitty (Docket No. 600). In the supporting memorandum accompanying Ms. West's motion, Federal Defendants argued that the recent death of the named plaintiff, Frank Etcitty, necessitated the staying of any further briefing so that issues associated with class representation could be resolved.[5] Ms. West represented that the motion was unopposed by counsel for Plaintiffs. However, Plaintiffs opposed this motion (Docket No. 603), arguing that "the procedural steps necessary to note the death of representative plaintiff, Frank Etcitty, are ministerial in nature and are unrelated to the issue of subject matter jurisdiction." Opposition to Motion to Stay Briefing Schedule at 1, filed August 22, 1994.

In their motion to stay briefing, Federal Defendants further stated:

Federal defendants are of the view that the court may lack subject matter jurisdiction over some, if not all of the claims, of the representative plaintiffs, and that

The Court will decide *this motion* to dismiss.... If this Court's decision, or any decision on appeal of it, holds that this Court does have subject matter jurisdiction over this action, this Court will by separate order direct the filing and service of a Third Amended Complaint and will then address other motions to dismiss brought in conformity with the first paragraph of Part II.C. of this Rule 16(b) Pretrial Scheduling Order. (Emphasis added).

5. Specifically, Federal Defendants argued: (1) the case caption should be amended (Plaintiffs had already filed such a motion the previous day [Docket No. 599], which Federal Defendants did not oppose); (2) Plaintiffs should amend their complaint to delete references to Frank Etcitty; and (3) all defendants should be directed to amend their answers appropriately. Federal Defendants' Motion to Stay Briefing Schedule Pursuant to Order Amending Rule 16(b) Pretrial Scheduling Order Pending Resolution of Class Representation Given the Death of Plaintiff Etcitty at 5–6.

claims should either be dismissed or perhaps transferred to the Court of Federal Claims.

. . . .

Finally, given the depth and complexity of the research which federal defendants must complete to file the motion, we suggest that our motion should be filed by November 17, 1994 . . .

Federal Defendants' Motion to Stay Briefing at 7–8.[6]

The Court entered a new Order Amending Rule 16(b) Pretrial Scheduling Order (Docket No. 608) on September 7, 1994. The Court granted Federal Defendants an extension until October 28, 1994 to "file its motion to dismiss or transfer this case to the United States Court of Federal Claims for lack of subject matter jurisdiction, predicated on the 'takings' theory articulated by counsel for the United States at the May 19, 1994, status conference." Order Amending Rule 16(b) Pretrial Scheduling Order at 1, filed September 7, 1994.

On October 28, 1994, Federal Defendants filed a motion for extension of time, until November 4, 1994, to file their motion to dismiss (Docket No. 611). The Court granted this motion (Docket No. 614).

On November 4, 1994, Ms. West filed Federal Defendants' Motion for Summary Judgment Seeking Dismissal for Lack of Subject Matter Jurisdiction or on Alternative Grounds (Docket No. 615). Federal Defendants abandoned any effort to seek dismissal or transfer to the Federal Claims Court for

lack of subject matter jurisdiction based on Ms. West's "takings" theory.[7] Instead, Federal Defendants sought dismissal of Plaintiffs' complaint under Fed.R.Civ.P. 12(b)(1), Fed.R.Civ.P. 12(b)(6), Fed.R.Civ.P. 12(b)(7), and Fed.R.Civ.P. 56.

On March 15, 1995, the Court held a hearing to determine whether Federal Defendants' motion for summary judgment would be denied as contrary to the orders of the Court and whether sanctions should be imposed on Pamela West, and/or the United States, for filing the motion. Order and Notice of Hearing at 1, filed February 17, 1995 (Docket No. 636). At the hearing, the Court stated that it believed Federal Defendants' motion for summary judgment was in clear violation of the Court's 1989 Rule 16(b) Scheduling Order, as well as the Court's May 20, 1994, and September 7, 1994, Orders. Ms. West responded that she and the Department of Justice believed Federal Defendants' motion for summary judgment was in compliance with the Court's orders. Transcript of Proceedings, March 15, 1995 at 14, filed April 21, 1995. The Court found the federal defendants' motion for summary judgment to be premature and contrary to both the Court's May 20, 1994, and September 7, 1994, scheduling orders.

### Discussion

Federal Rule of Civil Procedure 16(f) provides for sanctions in the event that a party or a party's attorney "fails to obey a scheduling or pretrial order . . ."[8] Such sanc-

---

**6.** The Court notes that Ms. West quotes the unambiguous language of the Court's May 20, 1994 Order (n. 4, *supra*) in the memorandum. *Id.* at 2.

**7.** Indeed, Federal Defendants' casual dismissal of the "takings" theory is remarkable:

Federal defendants considered and rejected the argument that this suit should be transferred to the U.S. Court of Federal Claims under the Tucker Act, 28 U.S.C. § 1346. Plaintiffs have never cited the Tucker Act in any of their filings. Instead, they have strongly indicated they seek relief in this court by filing the complaint in this court and then repeatedly amending their complaint to invoke the exclusive jurisdiction of a district court over cases under the Quiet Title Act. For these reasons, federal defendants conclude that

plaintiffs' filings and the law support adjudication in this court and do not warrant transfer. Federal Defendants' Motion for Summary Judgment at 2.

**8.** Fed.R.Civ.P. 16(f) provides, in pertinent part:

If a party or a party's attorney fails to obey a scheduling or pretrial order . . . the judge, upon motion or the judge's own initiative, may make such orders with regard thereto as are just, and among others any of the orders provided in Rule 37(b)(2)(B), (C), (D). In lieu of or in addition to any other sanction, the judge shall require the party or the attorney representing the party or both to pay the reasonable expenses incurred because of any noncompliance with this rule, including attorney's fees, unless the judge finds that the noncompliance was substantially justified or that other circumstances make an award of expenses unjust.

tions may be imposed on the Court's initiative. *Id. See also G.J.B. & Assocs., Inc. v. Singleton,* 913 F.2d 824, 831 (10th Cir.1990). Indeed, sanctions in the form of attorney's fees and costs are mandatory unless noncompliance is "substantially justified." Fed. R.Civ.P. 16(f). Neither the United States, nor the Department of Justice are immune from sanctions under the federal rules. *Adamson v. Bowen,* 855 F.2d 668, 670–671 (10th Cir.1988) ("the United States is liable for attorney's fees 'to the same extent that any other party would be liable under the common law or under the terms of any statute which specifically provides for such an award.'") (quoting the Equal Access to Justice Act, 28 U.S.C. § 2412 (1981)); *Bradley v. United States,* 866 F.2d 120, 126 (5th Cir. 1989) ("All parties are expected to conform their conduct to these rules, or face sanctions for their failure to do so; this is even more true for the federal government, a party that regularly appears before the federal courts, knows the rules by which they operate, and is even at times a special beneficiary of those rules.")

For the sake of this decision, the Court will assume that on May 19, 1994, Pamela West and Federal Defendants actually believed legal and factual support existed for the "takings" theory advanced by Ms. West. However, by "early August," it was clear to Ms. West and the Justice Department that no basis existed for challenging this Court's jurisdiction based upon the "takings" theory. Transcript of Proceedings: March 15, 1995 Hearing at 12. Yet, Ms. West subsequently sought and received two extensions of time within which to file Federal Defendants' motion, without ever advising the Court that the "takings" theory had been abandoned. Nearly three months after abandoning efforts to transfer this case to the United States Court of Claims, Federal Defendants finally notified, in passing, this Court and the other parties to this litigation, that the "takings" theory lacked merit. The reasons advanced by Ms. West [9] for rejecting the application of her "takings" theory to this case existed at the time of the status conference and would have been readily apparent to any party who had spent "too much time" examining the issue. Rather than informing the Court and the other parties in this case on August 16, 1994, that the United States had rejected the possibility of transferring the case to the United States Court of Claims, Federal Defendants filed a motion to indefinitely stay the briefing schedule to note the death of the named plaintiff, Frank Etcitty. Not only was the request for an indefinite stay without merit, Ms. West and the Department of Justice misrepresented themselves to this Court by asserting that the federal defendants needed additional time to research and file their motion to either dismiss or transfer Plaintiffs' claims to the Court of Federal Claims. Federal Defendants' Motion to Stay Briefing at 7–8.

As for the motion that was filed, Federal Defendants ask this Court to conclude that their "interpretation" of the language of the three prior orders of this Court, as well as the Court's rulings at the May 19, 1994, status conference, was reasonable, and their noncompliance with the Court's pretrial orders was "substantially justified." The Court finds the position advanced by Pamela West, the Department of Justice, and the federal defendants to be incredible and without merit. The Court thoroughly examined the transcript of the May 19, 1994, status conference, the original pretrial scheduling order entered in this case, and the May 20, 1994, and September 7, 1994, amendments to that scheduling order. There is simply no support for the interpretation asserted by Federal Defendants. The Court expressed in clear and unambiguous language that the federal defendants were to submit their motion to dismiss for lack of subject matter jurisdiction, *"predicated* on the 'takings' theory articulated by counsel for the United States at the May 19, 1994, status conference." Nowhere in the May 19, 1994, status conference was there any discussion of the federal defendants filing a motion to dismiss based on alternative theories. Nor do the Court's May 20, 1994, and September 7, 1994, orders mention theories of dismissal beyond the "'takings' theory articulated by counsel for the United States." Indeed, no other

9. n. 7, *supra.*

party to this litigation was confused by the orders of this Court.[10]

In addition to filing a motion that was materially different than that which was represented to the Court by Ms. West, the motion filed by the federal defendants also violates the clear and unambiguous language of the balance of the Court's 1989 Rule 16(b) Pretrial Scheduling Order. This case has not progressed beyond the confines of the Initial Phase of the 1989 Order. Motions to dismiss predicated on Rule 12(b)(6) and Rule 56 are not permitted in the Initial Phase, but were explicitly reserved for the Liability Phase of this litigation. The filing of a third amended complaint as well as additional discovery by Plaintiffs, and potentially the other parties to the litigation, is required prior to dealing with at least some of the issues raised in the motion filed by Federal Defendants. This was clear at the time of the May status conference, again on November 4, 1994, when Federal Defendants filed their motion, and was reinforced at the time of the March 15, 1995, hearing on this matter.

Finally, the Court notes that Pamela West has failed to cooperate with opposing counsel in the creation of a factual appendix as directed by the Court in its May 20, 1994, Order. The Court does not find Ms. West's assertions of cooperation to be credible. Indeed, despite the accolades lavished upon Ms. West at the March 15, 1995, hearing before this Court by her immediate supervisor at the Department of Justice, James Brookshire, this is not the first time that Ms. West's uncooperative and obstructive style of litigation has been called into question by a federal court.[11] The Court does not view Ms. West's behavior in relation to the motion at issue here to be an isolated example of inappropriate conduct. Instead, the Court views such behavior as part of a pattern of obstructive and frivolous conduct given the prior decade of controversy in this case, the Court's prior ruling that Federal Defendants' motion to strike was frivolous (Docket No. 636), and Ms. West's record in other federal courts.

Consequently, the Court finds that the filing, by Pamela West and the Department of Justice, of Federal Defendants' Motion for Summary Judgment Seeking Dismissal for Lack of Subject Matter Jurisdiction or on Alternative Grounds violates the clear and unambiguous mandates of the prior pretrial scheduling orders of this Court.

The Court further finds that the violations of these pretrial scheduling orders were not "substantially justified," but were instead calculated to and did cause substantial delay in the progress of this litigation.

The Court concludes that sanctions in the amount of $35,421 should be imposed against both Pamela West and the United States Department of Justice for the conduct of Ms.

---

**10.** The non-federal defendants declined to file a brief in support of Federal Defendants' motion because they were not prepared to address the issues raised in the motion. Instead, they sought direction from the Court on how to proceed in briefing the issues "[i]f the Court plans to consider the issues and arguments raised in the United States' Motion ..." Non–Governmental Defendants' Memorandum, filed November 29, 1994 at 2 (Docket No. 619).

**11.** *Oglala Sioux Tribe of the Pine Ridge Indian Reservation v. United States*, 21 Cl.Ct. 176, 192 (1990) ("Such an assertion, we find, is shocking, insofar as it is a gross misstatement of the law.") (referring to a position advanced by Ms. West); *Oglala Sioux Tribe of the Pine Ridge Indian Reservation v. United States*, 15 Cl.Ct. 615, 619 (1988) ("defendant, similarly, can be found to be an equal contributor to the disharmony in these proceedings. In short, and as noted supra, both parties have acted indecorously in that they have inundated this court with motions that amount to little more than petty bickering. Each has dem-

onstrated a regrettable inability to conduct herself in a reasonable adversarial manner conducive to the orderly administration of this case.... Each attorney, in an attempt to mortally discredit the other by one-upmanship, has committed serious infractions of the court's rules. It would appear to the court that if counsel were to concentrate their efforts on the business at hand, we would not receive pleadings which fail to conform to standard court rules, or which contain blatant errors and omissions. Additionally, the parties would also be able to amicably resolve many of the pretrial issues that have surfaced to date without involving the court. While we will not, as previously stated, impose sanctions, the court hereby places both plaintiff's and defendant's counsel on notice that, in the future, frivolous vindictive motions will result in swift and appropriate sanctions being imposed against the offender pursuant to RUSCC 11.")

West. FED.R.CIV.P. 16(f). This amount shall be paid to Paul E. Frye, counsel for Plaintiffs, in order to compensate Plaintiffs for their costs and attorney's fees expended in pursuit of the phantom "takings" issue, in responding to Federal Defendants' improperly-filed motion, and for other issues associated with the delay of the past ten months. Although the Court is troubled with the taxpayer shouldering the burden for the sins of government counsel, the Court concludes that evidentiary sanctions, as proposed by counsel for Plaintiffs and as permitted by Rule 37(b)(2)(B), (C), and (D), would be inappropriate at this time. Such evidentiary sanctions may well affect the interests of the non-federal defendants in this litigation and other parties that have not yet been joined. However, the Court will not tolerate any future acts of delay or obstruction on the part of the federal defendants. Such evidentiary sanctions, focused squarely on the federal defendants, will be reconsidered if the Department of Justice, and Pamela West in particular, fail in the future to cooperate with the other counsel in this litigation and honor their duty of candor toward this Court.

An order in accordance with this memorandum opinion shall be entered.